IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| Clarence Huell, | ) | C/A No.: 1:09-1613-HFF-SVH |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| Jon Ozmint and Warden McKither Bodison, | ) | |
| Defendants. | ) | |

Plaintiff, who is proceeding *pro se* in this action, is an inmate at Lieber Correctional Institutional ("Lieber"). Plaintiff has asserted claims under 28 U.S.C. § 1983, alleging various claims of violations of his constitutional rights.

Before the court are the following motions: (1) Defendants' Motion for Summary Judgment [Entry #21]; (2) Plaintiff's Motion to Compel filed March 22, 2010 [Entry #40]; (3) Plaintiff's Motion to Compel filed April 13, 2010 [Entry #46]; and (4) Plaintiff's Motion to Compel filed April 30, 2010 [Entry #48]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motion for summary judgment is a dispositive motion, this Report and Recommendation is entered for review by the district judge.

I.  Factual and Procedural Background

Plaintiff filed his complaint in this action on June 23, 2009 [Entry #1]. Defendants' motion for summary judgment was filed on November 16, 2009 [Entry #21]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised

Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' motion [Entry #23]. Plaintiff timely filed a response in opposition to Defendant's motion [Entry #25]. Having carefully considered the parties' submissions and the record in this case, the court recommends Defendants' motion for summary judgment be granted, rendering moot the remaining discovery motions.

Plaintiff first alleges that his civil rights were violated when Defendants failed to protect him from an assault while Plaintiff was incarcerated at Lieber Correctional Institution. Specifically, Plaintiff alleges that Defendants violated 42 U.S.C. §1983 by allowing Plaintiff to share a cell with an inmate who Plaintiff believes suffers from a mental illness. Plaintiff alleges that he was brutally attacked by his cellmate on March 6, 2009. (Compl. ¶¶ 1–12.) Next, Plaintiff alleges that on October 26, 2007, he was the victim of a false or incorrect disciplinary charge when he was charged with, and later convicted of, possessing a weapon in violation of South Carolina Department of Corrections ("SCDC") policies. (Compl. ¶¶ 13–18.) Finally, Plaintiff challenges the constitutionality of S.C. Code Ann. § 24-13-80, stating that said statute is in conflict with the South Carolina Constitution. Specifically, Plaintiff alleges that he was harmed by the application of this statute when monies were deducted from his inmate trust account to cover the costs of copies and postage. (Compl. ¶¶ 19–22.)

II. Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); *see also Celotex v. Catrett*, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become

immaterial because there can be "no genuine issue of material fact." In the *Celotex* case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. *Celotex*, 477 U.S. at 322–323.

III. Analysis

    A. Exhaustion of Administrative Remedies

Defendants first contend that Plaintiff did not exhaust his administrative remedies with regard to (1) his failure-to-protect claim, and (2) his claim related to the cost of legal copies and postage. The court agrees.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust his administrative remedies before filing a § 1983 action concerning his confinement. Specifically, 42 U.S.C.A. § 1997(e) states: "No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." In *Porter v. Nussle*, 534 U.S. 516 (2002), the United States Supreme Court held that the exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes. In *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006), the United States Supreme Court held that the PLRA exhaustion requirement requires "proper exhaustion." *Id.* The Court stated that "[a]dministrative law requires proper exhaustion of administrative remedies which means using all steps that the agency holds out, and doing so properly." *Id.* (Internal

quotations and citations omitted). Failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including § 1983. *Id.*

The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Woodford*, 548 U.S. 81, 89 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.* Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement.

Defendants argue, and Plaintiff does not dispute, that Plaintiff has not filed any grievances with respect to the allegations he made concerning: (1) his failure-to-protect claim stemming from the incident of March 6, 2009, or (2) the monies allegedly deducted from his account. Plaintiff makes no allegation that any grievance was filed, and the records of the SCDC fail to show a record of any grievance having been filed with respect to either of these incidents. *See* Inmate Grievance History for Clarence Huell [Entry #21-2]. Plaintiff instead argues that his claim falls in an exception to the general rule requiring exhaustion. The court disagrees and finds that the law supports no such exception as applied to this case.

Plaintiff's failure to file any grievance whatsoever with respect to the conditions complained of in the SCDC means that he has failed to exhaust his administrative remedies prior to filing the instant action. Pursuant to the dictates of both statute and relevant case law, Plaintiff's first and third causes of action were filed prematurely and are not ripe for review by this court. Therefore, Defendants are entitled to summary judgment on Plaintiff's first and third causes of action.

B.  Failure to Protect

In the event that the district judge does not agree that Plaintiff has failed to exhaust his administrative remedies, the undersigned analyzes the merits of Plaintiff's failure-to-protect claim as follows. It is undisputed that Plaintiff was assaulted by another inmate on March 6, 2009. The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Not every injury suffered by one inmate at the hands of other inmates constitutes liability for the prison officials responsible for the victim's safety. *Id.* at 835. A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate, however, does violate the Eighth Amendment. *Id.* at 828. "[A] prison official may be held liable under the Eighth Amendment . . . only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. The test is not whether an official knew or should have known of a substantial risk of serious harm, but whether he did, in fact, know of it and consciously disregard that risk. "[T]he official must be both aware of facts from

which the inference could be drawn that a possibility of harm exists, and he must also draw the inference. *Id.* at 837. Further, the Eighth Amendment is not violated by the negligent failure to protect inmates from violence. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Plaintiff has neither alleged nor submitted evidence that Defendants knew of a specific risk of harm to Plaintiff and consciously disregarded it. Although Plaintiff believes that his assailant is (or was) mentally ill and Defendants knew of this condition, Plaintiff has not alleged that Defendants knew his assailant had a propensity for violence. In other words, Plaintiff does not allege that prison personnel were aware of the risk of an assault or circumstantially should have been so aware. Thus, the bad acts of the assailant inmate cannot be constitutionally imputed to any of Defendants to support Plaintiff's failure-to-protect claim on the facts of this case.

In addition, by Plaintiff's own admission, Officer Roosevelt Reeves responded to the altercation by giving the assailant direct orders to stop fighting with Plaintiff and by spraying chemical spray into the cell to stop the fight. Plaintiff further admits that following the altercation, he was taken to the medical division for treatment for his injuries. Thus, Plaintiff has failed to set forth allegations establishing a constitutional violation for failure to protect.

C. Disciplinary Charge

In his remaining cause of action, Plaintiff alleges that he was wrongfully convicted of possession of a weapon stemming from an incident on October 26, 2007. On that date,

Plaintiff and other inmates were charged with possession of a weapon after a piece of metal was found in Plaintiff's cell. *See* Disciplinary Report and Hearing Record [Entry #21-3]. Plaintiff was ultimately found guilty of this charge and was deprived of canteen privileges, telephone privileges and visitation for 180 days. *Id.*

In order to recover damages for an allegedly unconstitutional conviction, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must ordinarily prove that the conviction or sentence at issue has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477, 486–487 (1994). Although *Heck* involved a conviction in a court of law, the holding in *Heck* is equally applicable to cases which implicate the validity of an internal prison disciplinary conviction and sanction. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (applying *Heck* to claim challenging a disciplinary proceeding); *see also Stone-Bey v. Barnes*, 120 F.3d 718, 721 (7th Cir. 1997) ("The 'conviction' in the prison disciplinary sense is the finding of guilt on the disciplinary charge, and if success on the plaintiff's Section 1983 claim necessarily would imply the invalidity of that finding, then *Heck* bars the claim until such time as its requirements are satisfied").

While no evidence has been presented to the court showing that Plaintiff's disciplinary conviction has been overturned, Plaintiff does not allege that he was docked any good time credits as a result of this conviction, nor is there any other indication that

this disciplinary conviction affects the length of Plaintiff's overall sentence. Defendants do not raise *Heck* as a possible defense to this claim. Therefore, for purposes of summary judgment, the undersigned has not considered *Heck* as a bar to Plaintiff's claim arising out of his disciplinary hearing and conviction. *Cf. Roller v. Cavanaugh*, 984 F.2d 120, 122 (4th Cir. 1993); *Strader v. Troy*, 571 F.2d 1263 (4th Cir. 1978) (where an inmate challenges the application to him of certain rules or procedures, but does not argue that he is entitled to immediate release or a speedier release, he may assert such a claim in federal court under 42 U.S.C. § 1983); *Pierce v. Freeman*, No. 95-7031, 1997 WL 467533 (4th Cir. 1997) (holding that a prisoner cannot proceed on a § 1983 claim challenging the validity of a disciplinary proceeding resulting in the deprivation of good-time credits).

Even if not otherwise barred by *Heck*, Plaintiff's claim relating to his disciplinary charges, hearing and conviction are still subject to dismissal. First, the court notes that while Plaintiff is entitled to a hearing and/or other procedural safeguards for protected interests, such as the loss of good time credits, he is not actually entitled to a due process hearing every time action is taken to control his behavior. *See generally*, *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); *Sandin v. Connor*, 515 U.S. 472, 478 (1995) (the "Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner").

Plaintiff does not allege any loss of good-time credits. Rather, Plaintiff alleges the hearings were unconstitutional because the evidence was "doctored." This allegation,

which Plaintiff does not support with any evidence, does not present a genuine issue of fact as to whether Plaintiff was denied any constitutional right.

Plaintiff has no general constitutional right to placement in any particular prison or to certain privileges, nor does he have any constitutional right to placement in any particular custody classification. *See Slezak v. Evatt*, 21 F.3d 590 (4th Cir. 1994) (the Constitution vests no liberty interest in inmates retaining or receiving any particular security or custody status as long as the conditions or degree of confinement is within the sentence imposed); *Neal v. Shimoda*, 131 F.3d 818, 828 (9th Cir. 1997) ("[A] prisoner does not have a constitutional right to be housed at a particular institution, ..., [or] to receive a particular security classification...."); *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) ("[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."); *Ordaz v. Lynaugh*, No. 93-4290, 1994 WL 144882, *2 (5th Cir. 1994) ("*Wolff* ... does not determine the procedural requirements for disciplinary action such as restriction of commissary privileges."); *Bazzetta v. McGinnis*, 430 F.3d 795, 802-05 (6th Cir. 2005) (regulation banning virtually all visitation for inmates found guilty of two or more violations of major misconduct was not a dramatic departure of a typical and significant hardship in relation to ordinary incidents of prison life necessary to implicate a state-created liberty interest, and thus did not rise to level of egregious conduct necessary to violate the guarantees of Fourteenth Amendment's procedural due process clause); *Tarney v. Boles*, 400 F.Supp.2d 1027, 1040

(E.D. Mich. 2005) (inmate's loss or restriction of telephone privileges for disciplinary reasons is not considered an atypical significant hardship, even when the disciplinary charges are allegedly false, and therefore does not implicate a liberty interest protected by due process); *Papadakis v. Director*, No. 08-670, 2010 WL 1753358 at *2 (E.D. Tex. Apr. 8, 2010) ("[B]eing placed in disciplinary confinement, losing commissary and property privileges for thirty days, and remaining at the same time earning class are not sanctions which impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'") (quoting *Sandin*, 515 U.S. 472).

Therefore, in order to state a § 1983 claim for the action alleged, Plaintiff would have to present evidence sufficient to show that Defendants' decision in his case was arbitrary, capricious, or based on some other unlawful motive. *See generally*, *Sandin*, 515 U.S. at 486; *Crowe v. Leeke*, 273 S.C. 763, 259 S.E.2d 614, 615 (1979). Plaintiff has presented no such evidence. Thus, Defendants are entitled to summary judgment.

D. Qualified Immunity

Defendants also assert that they are entitled to qualified immunity in their individual capacities. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless, *assuming arguendo* that Plaintiff has presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

In the instant case, Plaintiff has failed to establish any theory of liability upon the part of Defendants, and, furthermore, Plaintiff has failed to establish the existence of any constitutional deprivation. However, if the court were to find that Plaintiff has established some theory of liability upon the part of Defendants, and therefore, the existence of a constitutional deprivation, Defendants are still entitled to qualified immunity. The record before the court shows that as to Plaintiff and the specific events at issue, these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. They did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, these Defendants are entitled to qualified immunity.

IV.  Conclusion

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment [Entry #21] be granted and this case be dismissed in its entirety. If the district judge accepts this recommendation, the remaining discovery motions will be moot.

IT IS SO RECOMMENDED.

July 19, 2010                          Shiva V. Hodges
Florence, South Carolina            United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**